UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Findings of Fact and Conclusions of Law Following Bench Trial

A bench trial was held in this matter between May 1, 2012 and May 8, 2012. Dkts. # 77, 80, 84, 89. After considering the evidence offered at trial, the arguments of the parties, and the relevant law, the Court finds the United States is liable under the Federal Tort Claims Act. Specifically, the Court finds the United States liable for medical negligence in the care of Plaintiff Martin Hernandez Banderas ("Plaintiff" or "Banderas"). However, the Court finds the United States is not liable for intentional infliction of emotional distress. For the claim of medical negligence, the Court awards Plaintiff damages of $250,000.

I.      Procedural History

On October 7, 2009, Plaintiff filed a complaint against the United States, Esther Hui, Timothy Shack, and Gene Migliaccio. Dkt. # 1. The Complaint asserted nine causes of action. *Compl*. ¶¶ 112-176. The first seven causes of action were brought against the United States under the Federal Tort Claims Act ("FTCA"). These claims were for medical negligence, negligent establishment of policy for providing medical care to immigration detainees, negligent application of policy for providing medical care to immigration detainees, negligent hiring/retention, negligent supervision, negligent training, and intentional infliction of emotional distress ("IIED"). In addition, Plaintiff brought two *Bivens* claims for inadequate medical care and violation of the Equal Protection Clause of the Fourteenth Amendment. These latter two causes of action were brought against Hui, Shack, and Migliaccio.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

On March 17, 2009, the parties agreed to stay the *Bivens* claims pending the resolution of the petition for certiorari from the Ninth Circuit's decision in *Castaneda v. United States*, 546 F.3d 682 (9th Cir. 2008). Dkt. # 20. After the Supreme Court decision in *Hui v. Castaneda*, 130 S. Ct. 1845 (2010), the parties agreed to dismiss the *Bivens* claims with prejudice. Dkt. # 27.

In a pretrial filing, Plaintiff explicitly abandoned the Fourth and Sixth Causes of Action. *Proposed Final Pretrial Conference Order*, Dkt. # 55, at 1. In addition, Plaintiff omitted any mention of his Fifth Cause of Action, and the Court deems this Cause of Action to have likewise been abandoned.

Finally, before the start of the trial, Plaintiff withdrew his Second and Third Causes of Action. The case then proceeded to trial solely on the First Cause of Action under the FTCA for medical negligence and the Seventh Cause of Action under the FTCA for IIED.

II.   Factual Findings

Considering all of the evidence presented at trial, the Court makes the following factual findings. Beginning on October 25, 2006, Plaintiff was detained at the San Diego Correctional Facility ("SDCF") by United States Immigration and Customs Enforcement ("ICE"). Upon entry into SDCF, Plaintiff underwent an initial medical screening. At this screening, Plaintiff did not report any health problems. *Trial Ex*. 200 at 26-29.[1] On November 3, physician assistant Anthony Walker ("Walker") examined Plaintiff. At that exam, Plaintiff reported feeling "pretty good" and denied any history of diabetes. *Id*. at 35-36. Walker observed Plaintiff's overall condition was good and evaluated the condition of Plaintiff's extremities as normal. *Id.*

About five weeks later, on December 12, Plaintiff was seen by Walker and by Esther Hui, M.D. Walker noted that Plaintiff reported "my toes have been numb for about 8 months but I don't know if I have diabetes." *Id*. at 46. Walker, wrote: "obvious eschar to right medial malleolous, right great toe with severe charred effect and purulent drainage with palpation and expression. Smell to foot. [Patient] only has pain to touch to upper part of ankle but otherwise lower foot is numb to touch. Pulses intact." *Id*. at 46. In the videotaped deposition introduced at trial, Walker claimed that Plaintiff's foot "smelled like death." *Walker Depo*. 55:9. However,

---

[1] Trial Exhibit 200 was Plaintiff's medical charts recorded during his time at SDCF. Both physician assistant Anthony Walker and Dr. Esther Hui authored entries in the charts. Each chart entry notes the author of that particular entry.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

the Court notes that Walker did not record this observation in the chart. After examining Plaintiff, Walker assessed a "new diagnosis of diabetes from clinical impression, right foot cellulitis with evidence of mild gangrene to the end of right toe." *Trial Ex*. 200 at 46.

On the same day, Dr. Hui examined Plaintiff and made the following observations: "R big toe w/ darkened eschar on distal tip and evidence of fluctuance tracking medially, small amount of pus expressed; R medial ankle w/ 1cm eschar, erythema and warmth, decreased ROM of ankle, tender R shin ulcerated w/eschar without evidence of erythema; Smells anaerobic in nature." *Id*. at 39. Based on these observations, Dr. Hui diagnosed Plaintiff "w/ cellulitis, abscess of toe." Dr. Hui ordered monitoring of Plaintiff's blood sugar, X-rays of Plaintiff's foot, as well as debridement and continual dressing changes of the affected area. *Id*. Dr. Hui also prescribed antibiotics and admitted Plaintiff into SDCF's medical unit as an inpatient. *Id*. At trial, Dr. Hui testified she took a wound culture at this time, but there is no evidence in the chart to document the event.

From December 12 through 20, Plaintiff remained in inpatient care. Dr. Hui's trial testimony and charting reflect her perception that Plaintiff's condition was improving during this time. On December 16 and 17, Walker reported Plaintiff's condition as "healing slowly but with notable progression." *Id*. at 166, 172. Similarly, on December 18, Dr. Hui observed improvement and noted that Plaintiff "states that he is fine." *Id*. at 177.

In contradiction to Dr. Hui's testimony and the observations contained in the charts, Walker testified that Plaintiff was not receiving intravenous antibiotics or dressing changes at this time. *Walker Depo*. 85:26-86:6, 85:12-17, 87:23-88:1. Walker asserted that on December 15, Plaintiff's ankle started "doing some weird things . . . it just burst, blew open." *Id*. 85:25 to 86:1. Walker states the wound became "spongy." *Id*. 92:15. Furthermore, Walker alleges he watched Dr. Hui debride Plaintiff's foot using the same disposable suture removal set day after day, even though there was no shortage of suture removal kits at the facility. *Id*. 131:5-132:10. Walker testified that he was not comfortable with the treatment that Plaintiff was receiving and, as a result of his discomfort, Walker "started trying to distance [himself] from th[e] case." *Id*. 85:19-86:7. Nonetheless, Walker continued to be involved in Plaintiff's care. The Court also notes that Walker did not record any of the above observations in the medical records. To explain the lack of a record for these observations, Walker testified that Dr. Hui often told him what to write in the charts and that he would often copy and paste previous entries. *Id*. 130:3-19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

On December 20, Plaintiff was returned to the general population. Initially, the medical records document Plaintiff's continued improvement. Walker noted on December 22 "right lower leg medial aspect healing slow but well, right great toe looks real good and almost completely healed . . . [Patient] educated that nerve endings are coming back to life and that is the reason for more pain at this time." *Trial Ex*. 200 at 200. On December 26, Walker and Dr. Hui both reported improvement. *Id*. at 70-71. Again, on December 27 and 28, Walker optimistically wrote "healing well" and "right foot looks really well." *Id*. at 73-77. While the January 10 notation reported more leakage and a strong odor, Dr. Hui continued to chart "cellulitis resolved" up until January 11. *Id*. at 89, 90, 94, 100, 103, 105.

Despite having charted an improving condition for Plaintiff, Walker testified that Plaintiff's situation was in fact quite bleak at this point. Contradicting his recorded observations, Walker testified that sometime toward the end of December the right foot "blew up." *Walker Depo*. 92:8. Walker described it as follows:

> Just orange fluid. It was -- smelled really nasty, again, like death . . . It was real spongy. When you probed it, it was like the tissues underneath were like soup and the top layer was -- have you ever had a real good French onion soup where they kind of put mozzarella cheese on the top and you kind of push on the cheese and the cheese . . . like there was just all this fluid underneath.

*Id*. 92:13-22.

The earlier discrepancies notwithstanding, both Dr. Hui and Walker's accounts concur that Plaintiff's medical condition further deteriorated after January 11. Walker's notes from January 12 through 15 consistently state "dressing soaked." *Trial Ex*. 200 at 109, 110, 114, 120. On January 16, Dr. Hui's charting describes conditions not seen previously:

> S: [Patient] states that it started bleeding more yesterday . . .
>
> O: 10 x 5 cm ulcerated area of tissue . . .
>
> P: [M]ay need to be sent to ER if we cannot find an appt ASAP.

*Id*. at 122.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

On January 17, the government transported Plaintiff to an outside facility for treatment. Later that day, Walker recorded "a very foul odor, areas that are deteriorating quickly into necrosis and there may be some underlying necrotic tissue that this clinic is not able to manage or debride. His blood sugars have been increasing even though he is on insulin. He was sent to the Paradise Valley Wound clinic here in San Diego this am, then re-routed to the ER for more intensive and potential surgical consult for debridement." *Id*. at 125.

Upon Plaintiff's admittance to Paradise Valley, hospital personnel observed "a 14 x 5.5 x 1 cm wound which is covered entirely with foul smelling, necrotic material" and diagnosed:

1. Wagner grade 4 diabetic right ankle ulcer with underlying osteomyelitis.

2. Wagner grade 4 diabetic right great toe ulcer.

3. This places the patient at high risk for sepsis, need for amputation and even death.

4. The patient's wound healing will be impaired by anemia, depleted protein stores and severe infection with underlying osteomyelitis.

5. Necrotic tissue requires debridement to allow for further drainage of the wound.

6. Patient requires further vascular evaluation given absent distal pulses and the presence of gangrene.

*Trial Ex*. 76 at 240.

Plaintiff remained hospitalized from January 17 to March 6. The discharge summary outlines Plaintiff's hospitalization course:

> Dr. Sanzone evaluated for possible amputation; however, the patient refused. In an attempt to salvage the area, Dr. Otero was consulted. Dr. Otero took the patient for deep debridement of the gangrenous ulcer of the right foot and ankle with cauterization of the inner malleolus and excision of the necrotic soft bone. Pathology reports confirmed chronic osteomyelitis. The patient had continued with wound VAC. After several weeks

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

of antibiotics, Dr. Otero went back in and did further debridement and split-thickness skin grafting. The patient completed his full course of antibiotics.

*Id*. at 242.

Having summarized the relevant trial testimony and exhibits, the Court returns to the discrepancies that have been noted between the trial testimony and the medical records. Both Dr. Hui and Walker's testimony contradicted various aspects of the contemporaneously recorded chart entries. For example, according to Walker, Plaintiff's wound "blew up" sometime in December, but this was not recorded in any of the chart entries. As another example, Dr. Hui claimed to have taken a wound culture in early December, but this was also not recorded in the charts. Based on an evaluation of the witness' testimony and the contemporaneous chart entries, the Court finds that any testimony not confirmed by the charts is not credible.

Turning to the expert testimony, the Court heard from three experts: Plaintiff's experts Richard Sokolov, M.D. and Robert Cohen, M.D. and Defendant's expert Ty Ouzounian, M.D. Each expert opined that Dr. Hui's medical care fell below the standard of care that reasonable physicians would have used in similar circumstances. However, the experts disagreed about the date on which the care became substandard. Dr. Sokolov testified that, while it could reasonably be argued the treatment was substandard as early as December 12, the treatment was definitively substandard as of December 19. Dr. Cohen agreed with Dr. Sokolov's earlier date and opined the treatment was substandard beginning on December 12. Finally, Defendant's own expert, Dr. Ouzounian, concluded substandard treatment began on January 10, when Dr Hui reported a strong smell.[2] The Court finds Dr. Sokolov's account persuasive and the Court adopts Dr. Sokolov's findings in toto.

Dr. Sokolov's testimony first described various practices that a reasonable physician would use in the treatment of a foot wound on a diabetic patient. These practices include: timely referral of a patient to a neurologist, endocrinologist, and a vascular specialist; collection of cultures from the wound; anti-microbial therapy; use of monitoring tools to guide infection, particularly in a patient who is neuropathic; and glycemic control, i.e., the control of blood sugars.

---

[2] Notwithstanding the malpractice, Dr. Ouzounian opined that Plaintiff sustained no injury.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

      After establishing the appropriate standard of care, Dr. Sokolov next offered the following factual findings based on his review of the records.  While Plaintiff was at SDCF, Dr. Hui did not refer Plaintiff to any specialists outside of SDCF.  Dr. Hui did not perform a culture on the wound, even though a culture was crucial in deciding appropriate and optimal therapy.  Dr. Hui did not properly treat Plaintiff's blood sugar level, which was elevated on an almost daily basis.  Dr. Hui did nothing more than visual inspection and palpitation to ensure the infected foot's vascular system was performing correctly.  Dr. Hui did not order any cross-sectional or three-dimensional imaging of the affected area.  Dr. Hui did not seek a consultation to determine the amplitude or the extent of Plaintiff's neuropathy.  Finally, Dr. Hui simply continued Plaintiff on an antibiotic program even though laboratory tests showed the infection was worsening.

      After discussing his factual determinations, Dr. Sokolov opined that Dr. Hui's treatment of Plaintiff fell below the reasonable standard of care as of December 19.  Dr. Sokolov expressed his belief that one could reasonably argue that Plaintiff should have been hospitalized as early as December 12 – as Plaintiff's other expert, Dr. Cohen, argued – but that as of December 19 reasonable physicians would definitively agree that Plaintiff needed to be hospitalized immediately and started on a much more aggressive course of treatment.  Dr. Sokolov based his opinion on various aspects of Plaintiff's condition as of December 19: a white blood cell count of 19,000, when the normal upper limit is 10,500; the presence in Plaintiff's blood of band forms, which are immature types of white blood cells that appear when the body is stressed and is recruiting even the youngest white blood cells to assist in fighting infection; and a hemoglobin A1c of 10.4, when a normal A1c is close to 6.

      Dr. Sokolov concluded his testimony by addressing Plaintiff's injuries and the cause of those injuries.  If Dr. Hui had hospitalized Plaintiff on December 19, the hospital stay could have been minimized and the treatment could have been completed in one to two weeks.  Instead, Plaintiff was hospitalized for 48 days.  Therefore, Dr. Sokolov concludes Plaintiff's hospitalization was somewhere between 34 to 41 days longer than necessary.  Furthermore, Dr. Sokolov opined that if Plaintiff had been hospitalized on December 19, he would not have needed a skin graft.

III.     Legal Conclusions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

Plaintiff argues the facts prove two causes of action under the FTCA: one for medical negligence and one for IIED. To be cognizable under the FTCA, a claim must arise from the negligent or wrongful act of a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); *Sheridan v. United States*, 487 U.S. 392, 398 (1988). The acts and omissions at issue in this case occurred in California and, therefore, California law applies to Plaintiff's claims of medical negligence and IIED.

    a.    <u>Medical Negligence</u>

In California, a plaintiff asserting a claim for medical negligence must establish the following elements: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury." *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 917, 50 Cal. Rptr. 2d 309 (1996) (quotation marks omitted). A physician is negligent if he or she fails to use the level of skill, knowledge, and care in diagnosis and treatment that other reasonably careful physicians would use in the same or similar circumstances. *Mann v. Cracchiolo*, 38 Cal. 3d 18, 36, 210 Cal. Rptr. 762 (1985).

Medical negligence claims in California are subject to the Medical Injury Compensation Reform Act of 1975 ("MICRA"). *Hoffman v. United States*, 767 F.2d 1431, 1433 (9th Cir. 1985). MICRA places a $250,000 cap on non-economic damages in "an action for injury against a health care provider based on professional negligence." Cal. Civ. Code § 3333.2(b). The statute defines professional negligence, in relevant part, as "a negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death." Cal. Civ. Code § 3333.2(c)(1). While the California Supreme Court has not squarely addressed whether non-economic damages stemming from intentional conduct that occurs in the course of providing medical services could be capped under MICRA, *see Barris v. County of Los Angeles*, 20 Cal. 4th 101, 115, 972 P.2d 966 (1999) (declining to address the issue), several districts of the California Court of Appeal have held that MICRA does not apply to intentional conduct. *See Perry v. Shaw*, 88 Cal. App. 4th 658, 668, 106 Cal. Rptr. 2d 70 (2001) (holding MICRA limitations did not apply to a claim for battery stemming from medical procedure); *Unruh-Haxton v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 355-56, 76 Cal. Rptr. 3d 146 (2008) (holding MICRA's statute of limitations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

did not apply to claims of fraud, conversion, and IIED related to wrongful intentional conduct in a medical procedure).

    b.    <u>Intentional Infliction of Emotional Distress</u>

To establish a claim for IIED, a plaintiff must prove the following: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51, 95 Cal. Rptr. 3d 636 (2009) (quotation marks omitted).[3]

As to the first element, a defendant's conduct is outrageous when it is so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 1051 (quotation marks omitted). The defendant's conduct must also be "intended to inflict injury or engaged in with the realization that injury will result." *Id.* (quotation marks omitted). In determining outrageousness, the following factors may be considered: whether a defendant "(1) abuses a relation or position that gives him power to damage the plaintiff's interests; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092, 1122, 252 Cal. Rptr. 122 (1988) (quotation marks omitted), *superseded by statute on other grounds as stated in* 25 Cal. 4th 826.

---

[3] The government argued in a pretrial brief that Plaintiff cannot pursue his claim for IIED under the FTCA. While the Court's ruling on Plaintiff's IIED claim ultimately makes this issue moot, the Court disagrees with the government's position. Certain intentional torts may not be brought under the FTCA, but IIED is not one of these precluded torts. The precluded torts are expressly limited to the following: "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). As the Ninth Circuit has explained, an IIED claim may be pursued under the FTCA when the claim does not arise out of any of the enumerated torts above. *Sheehan v. United States*, 896 F.2d 1168, 1172 (9th Cir. 1990). Here, Plaintiff's IIED claim does not arise from assault or battery or any of the other precluded torts under 28 U.S.C. § 2680(h).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

Additionally, under the first element of IIED, a defendant may be found to have acted with reckless disregard in causing a plaintiff emotional distress if a defendant "devoted little or no thought to [the] probable consequences of his conduct." *See KOVR-TV, Inc. v. Super. Ct.*, 31 Cal. App. 4th 1023, 1031-32, 37 Cal. Rptr. 2d 431 (1995).

For the second element of IIED, severe emotional distress has been defined as "emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." *Girard v. Ball*, 125 Cal. App. 3d 772, 788, 178 Cal. Rptr. 406 (1981) (quotation marks omitted).

IV.   Discussion

The Court finds Plaintiff has proven a case of medical negligence. Dr. Hui failed to use the level of skill, knowledge, and care in diagnosis and treatment that a reasonably careful physician would have used in similar circumstances. *See Mann*, 38 Cal. 3d at 36. The care was substandard as of December 19. This substandard care injured Plaintiff and caused him to suffer damages. Dr. Hui's acts of negligence were within the scope of her employment for the United States, and thus the United States is liable for her negligent actions under the FTCA. *See* 28 U.S.C. § 1346(b).

The Court finds Plaintiff has not proven a case for IIED. While the care for Plaintiff provided at SDCF was certainly substandard, the conduct of the government officials at SDCF was not so "extreme as to exceed all bounds of that usually tolerated in a civilized community." *Hughes*, 46 Cal. 4th at 1051. The Court finds that although Dr. Hui's decisions in regards to Plaintiff's medical care were poor, Dr. Hui was attempting to improve Plaintiff's condition. She monitored his blood sugar, took X-rays, debrided the affected area, and ordered continual dressing changes. She also prescribed antibiotics and admitted Plaintiff as an inpatient in SDCF's medical unit. And, for a period of time, Plaintiff's condition appeared to be improving. Ultimately, the care Dr. Hui provided fell below the standard for due care, but the Court cannot say that Dr. Hui's care was "extreme and outrageous conduct [ ] with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Id.* at 1050.

The Court now turns to the damages due Plaintiff under his medical negligence cause of action. Plaintiff limits his damages to general damages and does not seek any special damages, such as medical expenses or loss of earnings. *See Plt.'s Mem. of Contentions of Law and Fact* at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-6594 PSG (CTx) | Date | May 29, 2012 |
|---|---|---|---|
| Title | Martin Hernandez Banderas v. United States | | |

17:6-28. The Court finds Plaintiff suffered substantial and preventable pain and suffering after December 19. The Court credits Plaintiff's testimony regarding the tremendous anxiety he suffered when he feared he would lose his lower leg to amputation. The Court also finds credible Plaintiff's testimony regarding the pain he still suffers and his resulting physical limitations. The Court viewed the horrendous scar on Plaintiff's leg, which essentially looks like a shark bit off a piece of Plaintiff's leg. As Dr. Sokolov opined, Plaintiff's treatment could have ended in December, but instead Plaintiff's ordeal continued into March.

However, congruent with the Court's findings on the IIED claim, the Court finds that Dr. Hui's actions were not intentional, but rather negligent. As such, Plaintiff's case is "an action for injury against a health care provider based on professional negligence," and must fall within the MICRA limitations. *See* Cal. Civ. Code § 3333.2(b). To be clear, Plaintiff's pain and suffering at SDCF and Paradise Valley, his anxiety caused by potential amputation, his current pain and limitations, and the scarring from the skin graft warrant an award substantially over the MICRA limits. Nonetheless, this claim falls squarely within MICRA's provisions. Accordingly, the Court awards Plaintiff damages of $250,000.

IV.     Conclusion

For the foregoing reasons, the Court finds Plaintiff has proven a claim for medical negligence under the FTCA. Plaintiff has not proven a claim for IIED under the FTCA. Plaintiff is awarded damages of $250,000 against the United States for the medical negligence claim. Plaintiff is ordered to submit a proposed judgment consistent with this order by June 12, 2012.

**IT IS SO ORDERED.**

IR for WH